**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAREK KRASUCKI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN MARITIME SERVICES OF<br>NEW YORK INC., et al.,<br><br>　　　　　Defendants. | **Civil Action No. 23-03268-ES-AME**<br><br>**REPORT and RECOMMENDATION** |

**ESPINOSA, U.S.M.J.**

This matter is before the Court on the motion of Plaintiff Marek Krasucki ("Plaintiff") to remand this action to the Superior Court of New Jersey, Middlesex County. [D.E. 7]. Defendant American Maritime Services of New York Inc. ("AMS"), which opposes the motion [D.E. 10], removed the action based on its assertion that Section 301 of the federal Labor Management Relations Act of 1947 ("LMRA") preempts Plaintiff's state law claims. [D.E. 1]. The Honorable Esther Salas, U.S.D.J., referred the motion to this Court for a Report and Recommendation. Having reviewed and considered the parties' filings [D.E. 7, 10, 11] and finding no need for oral argument, *see* Fed. R. Civ. P. 78, this Court concludes that Section 301 of the LMRA does not preempt Plaintiff's narrowly-pled, state law claims because those claims are not premised on a violation of the applicable collective bargaining agreement ("CBA") and their resolution does not substantially depend upon the Court interpreting that CBA. Accordingly, finding the District Court is without subject matter jurisdiction based on federal question and preemption principles, this Court respectfully recommends that Plaintiff's motion to remand be granted.

## I.    RELEVANT BACKGROUND

Plaintiff, an AMS employee, commenced this action in state court on or about May 4, 2023. [*See* D.E. 1, Notice of Removal ¶ 1]. According to the complaint, which provides the source for the following factual summary,[1] Defendants subjected Plaintiff to a hostile work environment because of his national origin and retaliated against him for reporting unlawful conduct. [*See generally* D.E. 1-1, Compl. at 1]. Specifically, Plaintiff alleges that, since 2011, Defendant Robert Chlan ("Chlan"), the Shop Steward for Plaintiff's union, "repeatedly made discriminatory comments about Plaintiff" because of his Polish background. [*Id.* ¶¶ 9, 13, 22; *see also id.* ¶¶ 16-21 (identifying examples of Chlan's alleged misconduct)]. Although Plaintiff directly reported to Thomas Vroman ("Vroman"), the assistant terminal manager for AMS's Red Hook Container Terminal, Chlan acted as Plaintiff's supervisor and "ma[de] and influenced decisions at AMS because of his position as the Shop Steward." [*Id.* ¶¶ 7-8, 10-12].

Plaintiff complained to Chlan about this conduct, which resulted in Chlan threatening Plaintiff. [*Id.* ¶ 24]. In October 2022, Chlan physically assaulted Plaintiff by "grabb[ing] [him] by his throat and lift[ing] up [his] head." [*Id.* ¶¶ 26-30]. Plaintiff complained to "Chlan's office" about the incident, which prompted Chlan to issue additional verbal threats. [*Id.* ¶¶ 31-33]. Plaintiff then complained to other AMS employees, including Vroman. [*Id.* ¶ 34]. Following a meeting with Vroman, Chlan, and another AMS employee, Vroman handed Plaintiff a suspension letter, which stated that Plaintiff was being suspended for "verbally abus[ing] a coworker" and being insubordinate to Chlan on the same day Chlan physically assaulted him.

---

[1] This factual summary, drawn from the allegations of the complaint, provides context and foundation for this Report and Recommendation. While this Report and Recommendation is based on the record presented by the parties, nothing herein shall constitute a conclusive finding of fact or a definitive assessment of the weight of the evidence.

[*Id.* ¶¶ 35, 39]. After Vroman notified Plaintiff of the suspension, and in Vroman's presence, Chlan made additional verbal threats and "pushed his chest up against Plaintiff." [*Id.* ¶¶ 36-37].

Following the suspension, Plaintiff returned to work with reduced hours and "pace," and the harassment and retaliation continued. [*Id.* ¶¶ 42-43]. In addition to alleging that members of upper management "either participated in the harassment or were willfully indifferent," Plaintiff contends AMS is liable because it (i) knew or should have known about the illegal conduct, (ii) delegated control to the harassing employees, and (iii) failed to promulgate an anti-harassment policy and take other remedial measures. [*Id.* ¶¶ 49-52]. Based on these allegations, Plaintiff asserts claims against Defendants under the New Jersey Law Against Discrimination ("NJLAD") and the New Jersey Conscientious Employee Protection Act ("CEPA"), as well as an assault and battery claim against Chlan, in his individual capacity. [*Id.* ¶¶ 65-71].

On June 14, 2023, AMS removed the action claiming the District Court has subject matter jurisdiction based on a federal question. [*See* D.E. 1, Notice of Removal].[2] In its removal notice, AMS asserts that because Plaintiff's claims are "inextricably linked" to the interpretation of the terms of the CBA, the action was properly removed as preempted under Section 301 of the LMRA. [*Id.* ¶¶ 6-8]. AMS further declares the Court has supplemental jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1367(a). [*Id.* ¶ 9]. Following removal, and in response to the complaint, AMS moved for an order compelling arbitration of the NJLAD and CEPA claims and staying the remainder of the action pending arbitration. [D.E. 5]. Alternatively, AMS seeks dismissal of those claims, under Rule 12(b)(6), as preempted under the LMRA. [*Id.*].

---

[2] Despite filing the notice of removal on behalf of all Defendants, defense counsel later filed a notice indicating that they do not represent Chlan, who they believe has not been properly served, and that they thus inadvertently filed the removal notice on Chlan's behalf. [*See* D.E. 1, 3].

Plaintiff opposed AMS's motion [D.E. 9] and separately moved to remand this action to state court [D.E. 7], arguing the Court lacks subject matter jurisdiction because Plaintiff's claims are not preempted. Plaintiff contends that his claims do not require the Court to inquire into the rights conferred by, or to interpret, the CBA. [D.E. 7-1 at 8]. Rather, he asserts that resolution of his claims only requires an assessment of the facts and motivations of the parties relative to state law. [*Id.*]. Plaintiff also demands an award of attorneys' fees and costs associated with the removal, arguing AMS lacked an objectively reasonable basis to remove the action. [*Id.* at 8-9].

In reply, AMS maintains Plaintiff's claims are preempted because all relevant persons "are party to or covered by" the applicable CBA. [D.E. 10 at 4]. AMS also argues that to resolve Plaintiff's claims, the Court must conduct a comprehensive review of the CBA's provisions concerning (i) the Shop Stewards' selection, authority, and responsibilities, (ii) Plaintiff's work hours, (iii) disciplinary procedures, and (iv) "past practice" and "course of conduct." [*Id.* at 4-5]. Moreover, AMS contends its alleged retaliatory actions were lawful and consistent with the terms of the CBA. [*Id.* at 5]. Finally, AMS opposes Plaintiff's request for fees associated with removal, asserting it properly relied on relevant recent case law "compelling removal and preemption of similar claims under the LMRA." [*Id.*].

## II.    DISCUSSION

### A.    Applicable Jurisdictional and Removal Principles

The parties dispute whether AMS properly removed this action by invoking the Court's subject matter jurisdiction based on a federal question. *See* 28 U.S.C. §§ 1331, 1441(a). However, even in the absence of such a dispute, the Court has "an independent obligation to satisfy [itself] of jurisdiction …." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003); *see also* 28 U.S.C. § 1447(c) (mandating remand "[i]f at any time before final judgment it

appears that the district court lacks subject matter jurisdiction" over an action removed from state

court). In assessing jurisdiction, the Court must strictly construe the removal statute "against

removal and [resolve] all doubts … in favor of remand.'" *Boyer v. Snap-On Tools Corp.*, 913

F.2d 108, 111 (3d Cir. 1990) (citations omitted). Here, as the removing party, AMS bears the

burden of showing that the District Court has proper jurisdiction. *Samuel-Bassett v. Kia Motors*

*Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (citation omitted).

 A defendant may remove a civil action arising under the United States Constitution or

federal law from state court to a federal district court. *See* 28 U.S.C. §§ 1331, 1441(a). The

"well-pleaded complaint" rule—which governs whether a federal court has federal-question

jurisdiction—provides that such jurisdiction "exists only when a federal question is presented on

the face of … [a] properly pleaded complaint." *KN Elec. Contractor, Inc. v. Int'l Bhd. of Elec.*

*Workers, Loc. Union No. 351*, No. 21-20650, 2022 WL 2980984, at *3 (D.N.J. July 28, 2022)

(quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Franchise Tax Bd. of*

*State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983) (stating

federal-question jurisdiction exists when a complaint "establishes either that federal law creates

the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a

substantial question of federal law"). Thus, the rule permits a plaintiff, as the master of the

complaint, to avoid federal jurisdiction through exclusive reliance on state law when stating a

claim. *Barone v. Pub. Serv. Elec. & Gas Co.*, No. 18-16569, 2019 WL 3297230, at *4 (D.N.J.

July 22, 2019) (citing *Caterpillar Inc.*, 482 U.S. at 392).

B.    Preemption under the LMRA as a Basis for Federal-Question Jurisdiction

Here, Plaintiff's complaint only asserts state law claims—suggesting, on first read, no federal-question jurisdiction. However, given that complete preemption "is an exception to the well-pleaded complaint rule," a defendant may, in certain instances, remove an action asserting state law claims by invoking federal-question jurisdiction as the basis for the district court's subject matter jurisdiction. *Barone*, 2019 WL 3297230, at *4; *see also Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) (stating that, under the doctrine of complete preemption, "a claim which comes within the scope of th[e] cause of action, even if pleaded in terms of state law, is in reality based on federal law"). AMS asserts Plaintiff's claims are preempted under Section 301 of the LMRA, which (i) is capable of completely preempting a state law claim, (ii) grants federal courts jurisdiction over suits for violations of a CBA, and (iii) "authorizes [them] to fashion a body of federal law for the enforcement of [CBAs]." *Rutledge v. Int'l Longshoremen's Ass'n AFL-CIO*, 701 F. App'x 156, 160 (3d Cir. 2017) (quoting *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 368 (1990)) (quotation marks omitted). To that end, courts construe that provision to preempt state law claims either "founded directly on rights created by [CBAs]," or "substantially dependent on analysis of a [CBA]." *Id.* (quoting *Caterpillar Inc.*, 482 U.S. at 394) (quotation marks omitted). If resolution substantially depends on the meaning of the terms of a CBA, state law is displaced by "federal labor-law principles … [which] must be employed to resolve the dispute." *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988)); *KN Elec. Contractor, Inc.*, 2022 WL 2980984, at *4 (stating that preemption occurs if the claim "is so 'inextricably intertwined' with the terms of a labor contract" (quoting *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985))).

Yet, pre-emption in this area should not be lightly inferred. *See Lingle*, 486 U.S. at 412. "[Section] 301 cannot be read broadly to preempt nonnegotiable rights conferred on … employees as a matter of state law." *N.J. Carpenters v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 306 (3d Cir. 2014) (citation omitted); *Medley v. Atl. Exposition Servs., Inc.*, 550 F. Supp. 3d 170, 191-92 (D.N.J. 2021) ("… [P]reemption of state law claims under the LMRA is limited in scope."). There is no complete preemption under Section 301 where: (i) the CBA need not be interpreted to enforce "the rights created by state law," *KN Elec. Contractor, Inc.*, 2022 WL 2980984, at *4 (citing *Caterpillar*, 482 U.S. at 391); (ii) the claim has "no other relationship to a CBA beyond the fact that they are asserted by an individual covered by a CBA," *id.* (citing *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 25); or (iii) the claim "only tangentially involves a provision of the CBA." *Id.* (citing *Lingle*, 486 U.S. at 407); *see also Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 229 (3d Cir. 1995) ("[T]he mere existence of a [CBA] does not prevent an individual from bringing state law claims based on some independent agreement or obligation."). In the case of a state-law claim that depends "for its resolution upon both the interpretation of a [CBA] and a separate state-law analysis that does not turn on the agreement," the Supreme Court has recognized that federal law would govern "the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted." *Lingle*, 486 U.S. at 413 n. 12; *Medley*, 550 F. Supp. 3d at 192 ("The simple fact that a case involves 'reference to or consideration of the terms of a [CBA]' does not warrant preemption, as this does not signal that the litigated issues require interpretation of the CBA." (citation omitted)). In short, Section 301 "does not 'preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract' or 'where the state law claim can be resolved

without substantially interpreting the collective bargaining agreement itself.'" *Barone*, 2019 WL 3297230, at *5 (quoting *Allis-Chalmers Corp.*, 471 U.S. at 212, 220).

       C.      <u>Section 301 of the LMRA Does Not Preempt Plaintiff's Claims</u>

As summarized above, "[t]he fundamental question in evaluating Section 301 preemption is whether resolution of the state law claim turns on the meaning of a [CBA]." *McKeown v. Verizon N.J. Inc.*, No. 12-5080, 2012 WL 5504866, at *2 (D.N.J. Nov. 8, 2012) (citing *Lingle*, 486 U.S. at 405-06), *report and recommendation adopted*, 2012 WL 5989468 (D.N.J. Nov. 27, 2012). Plaintiff answers this question in the negative—arguing the Court need only "inquire into the facts and motivations of the parties relative to state law," [D.E. 7-1 at 11], and that the CBA has no bearing on whether he was the subject of (i) harassment based on his national origin and/or (ii) retaliation because of his whistle-blowing activity. [D.E. 11 at 6-7]. In turn, AMS contends that resolution of Plaintiff's claims "necessarily require a comprehensive analysis and interpretation of the parties' rights and obligations under their negotiated CBA." [D.E. 10 at 9].

The Court rejects AMS's assertion that Section 301 of the LMRA preempts Plaintiff's hostile work environment and national origin discrimination claim under the NJLAD, which is a straightforward state law claim available to obtain redress for instances of unlawful discrimination and harassment. *See Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 600 (1993). To prevail on such a claim, Plaintiff must, at a minimum, show he suffered intentional discrimination because of his national origin and that such discrimination (i) "was severe or pervasive," (ii) "detrimentally affected [him]," and (iii) "would detrimentally affect a reasonable person in like circumstances." *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 167 (3d Cir. 2013) (addressing such a claim under Title VII of the federal Civil Rights Act of 1964 ("Title VII")) (citation omitted); *Joshi v. Pub. Consulting Grp., Inc.*, No. 22-1848, 2022 WL 17340728,

at *3 (D.N.J. Nov. 30, 2022) (conducting the same Title VII analysis for a hostile work environment claim brought under the NJLAD "[b]ecause the same basic principles apply" (citations omitted)); *see also Lehmann*, 132 N.J. at 603. Unquestionably, the existence and level of discrimination and its impact on a plaintiff and others "are factual questions that do not turn on an interpretation of [a] CBA." *See Rutledge*, 701 F. App'x at 162 (finding no LMRA preemption of a NJLAD claim alleging the employer denied the plaintiff reinstatement because of certain medical conditions and a disability). Rather, these questions "pertain 'to the conduct of the employee and the conduct and motivation of the employer,'" and are "based on 'rules that proscribe conduct' and on 'establish[ed] rights and obligations, independent of a labor contract.'" *Barone*, 2019 WL 3297230, at *5-6 (quoting *Lingle*, 486 U.S. at 407, and *Allis-Chalmers Corp.*, 471 U.S. at 211-12, and remanding the NJLAD discrimination claims to state court "even though [the defendant] suggest[ed] that it legitimately terminated [the plaintiff] after he exceeded his allotted leave time under the CBA"); *see also Patterson v. Exxon Mobil Corp.*, 262 F. Supp. 2d 453, 457 (D.N.J. 2003) (stating that these "purely factual questions … do not require a court to interpret any term of a [CBA]" (citations and internal quotation marks omitted)).

Similarly, Section 301 of the LMRA does not preempt Plaintiff's retaliation claim under CEPA, which "is remedial legislation that protects an employee from employer retaliation in cases where the employee blows the whistle on illegal or unethical activity." *Norton v. Stop & Shop Store # 830*, No. 16-9385, 2017 WL 3610492, at *7 (D.N.J. Aug. 22, 2017) (citation and internal quotation marks omitted). To prevail on his CEPA claim, Plaintiff must show: (i) "he reasonably believed his employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law"; (ii) "he performed whistle-blowing activity"; (iii) "retaliatory action was taken against him"; and (iv) "a causal connection between the whistle-blowing

activity and the adverse employment action." *McKeown*, 2012 WL 5504866, at *3 (citing

*Blackburn v. United Parcel Serv.,* 179 F.3d 81, 92 (3d Cir.1999)); *Blount v. TD Bank, N.A.*, No.

20-18805, 2023 WL 4621881, at *8 (D.N.J. July 19, 2023), *reconsideration denied*, 2023 WL

7403603 (D.N.J. Nov. 9, 2023). Thus, like in the case of a NJLAD claim, the same

considerations apply here—*i.e.*, the plaintiff's conduct and the employer's conduct and

motivation. *See Mraz v. Loc. 254 of United Bhd. of Carpenters & Joiners of Americal*, No. 13-

899, 2013 WL 5300656, at *3 (D.N.J. Sept. 18, 2013) (citation omitted), *report and*

*recommendation adopted*, 2013 WL 5530006 (D.N.J. Oct. 4, 2013); *see also Norton*, 2017 WL

3610492, at *7 (stating that a CEPA claim does not require "an interpretation of the labor

contract"); *McKeown*, 2012 WL 5504866, at *3 ("Plaintiff's state of mind … do[es] not involve

consideration of a CBA."); *Fischer v. G4S Secure Sols. USA, Inc.*, No. 10-6792, 2011 WL

3859742, at *5 (D.N.J. Aug. 31, 2011) (stating that CEPA claims "exist independently of private

agreements, and cannot be waived or altered by agreement …").

Based on the foregoing principles, a vast majority of courts within this District have held

that Section 301 of the LMRA does not completely preempt state law claims brought either

under the NJLAD or CEPA. *See Medley*, 550 F. Supp. 3d at 193-94 ("…District of New Jersey

courts have consistently determined that claims under the NJLAD are separate and independent

from the terms of labor contracts." (citations and internal quotation marks omitted)); *Barone*,

2019 WL 3297230, at *5 (collecting cases raising NJLAD claims); *see also Zanni-Schaffer v.*

*Inspira Health Network*, No. 17-1078, 2017 WL 6667519, at *1 (D.N.J. Nov. 8, 2017)

(collecting cases raising CEPA claims) ("The caselaw on this issue appears to be unanimous:

CEPA claims are not completely preempted by the LMRA."). Indeed, the Third Circuit has

previously noted that the Supreme Court recognized that "the LMRA does not preempt state-law

claims of retaliatory discharge following an employee's filing of a worker's compensation claim," and that "there is no reason to distinguish between [] workers' compensation laws and [] anti-discrimination laws." *Rutledge*, 701 F. App'x at 161 (citing *Lingle*, 486 U.S. at 407, 413).

Having examined the applicable law and Plaintiff's NJLAD and CEPA claims, this Court concludes they are not "substantially dependent," or "inextricably linked," to the interpretation of the applicable CBA. Significantly, Plaintiff neither alleges a breach of that CBA nor seeks a remedy available under its terms. Rather, he alleges unlawful discrimination under the NJLAD— specifically, the presence of a hostile work environment fashioned by the alleged discriminatory acts of Chlan and other harassing conduct of members of upper management—as well as unlawful retaliation in the form of reduced hours and further harassment for reporting illegal conduct and activity in violation of CEPA. *See Sealy v. Verizon Commc'ns, Inc.*, No. 13-7461, 2014 WL 7182341, at *4 (D.N.J. Aug. 1, 2014) (concluding there was no need to interpret the CBA to assess whether the defendant—on the basis of the plaintiff's age and disability—failed to offer her a position, discouraged her from "asserting her 'bumping' and seniority rights under the CBA," and led her to mistakenly believe that "she had no alternative but to waive her rights and retire"), *report and recommendation adopted*, 2014 WL 7331950, at *4 (D.N.J. Dec. 15, 2014).

Even if Plaintiff were to seek a remedy that "might depend, in part, on the CBA, his claim is not necessarily preempted." *Rutledge*, 701 F. App'x at 162. While a CBA may contain helpful information to determine damages available to a prevailing employee, such as rate of pay, the state law claim "would stand," and "federal law would govern the interpretation of the agreement to determine the proper damages." *Lingle*, 486 U.S. at 413 n.12 (citation omitted). Similarly, the factfinder may need to decide factual questions "as to which the CBA is relevant, but not determinative." *Barone*, 2019 WL 3297230, at *6; *see also Sanchez v. L3Harris Techs.,*

*Inc.*, No. 20-5555, 2020 WL 6867166, at *3 (D.N.J. Nov. 23, 2020) (stating that, in an action

alleging that the defendants harassed and retaliated against the plaintiff because of a disability,

the focus is whether the plaintiff was treated differently because of his disability, and "[t]he fact

that the Court may need to reference the CBA does not render [the] claims preempted"); *Sealy v.

Verizon Commc'ns, Inc.*, No. 13-7461, 2014 WL 7331950, at *4 (D.N.J. Dec. 15, 2014) (noting

that "[j]ust because Plaintiff could allege that Defendant violated the bumping provisions of the

CBA under the same set of facts does not render her parallel NJLAD claims preempted"].

Indeed, the *Medley* decision, on which AMS relies substantially, drives home this point.

        In *Medley*, certain defendants sought to dismiss an action filed by a group of non-white,

union laborers who alleged their employer, their union, and a union pension failed to provide

them with the full employment benefits other white employees received, in violation of the

LMRA, NJLAD, and state common law. *See Medley*, 550 F. Supp. 3d at 178-80. In addition to

their Section 301 claims alleging the defendants violated the CBA, the plaintiffs asserted three

distinct NJLAD claims: (i) those pertaining to the same issues forming part of their LMRA

claims; (ii) those based on the allegation that their union negotiated better terms for white union

members and mistreated them due to their race, national original, color, and ethnicity; and (iii)

those asserting the laborers were terminated due to those protected characteristics and their

grievances. *See id.* at 181-82, 193. Relying on the "clear line of precedent" from this District and

Circuit, the court held that the LMRA did not preempt the second and third categories of

discrimination claims. *Id.* at 194 (finding no basis to conclude "that analysis of any such claims

would center on an interpretation of the CBA"). In so holding, it stated those claims

"straightforwardly [sought] only enforcement of their rights not to be discriminated against under

the state anti-discrimination law, 'which defines the right without reference to any [CBA].'" *Id.*
(quoting *Patterson*, 262 F. Supp. 2d at 466).

However, the court in *Medley* held that the pension contributions-based NJLAD claim
was "uniquely dependent on the[] underlying CBA and explicitly pled to incorporate contractual
interpretation in a manner that is fundamentally different from the claims analyzed in prior cases
in this District." *Id.* at 194-95 (nonetheless stating that it "readily agree[d] with th[ose] consistent
prior holdings"). In distinguishing essentially every other case in this District, the court noted
that the plaintiffs separately alleged a federal LMRA claim, which was dismissed as barred under
the applicable statute of limitations and for failure to exhaust, and "affirmatively chose[] to place
the question of how the CBA's pension-contribution provisions should be interpreted at the core
of their NJLAD claim." *Id.* at 181-90, 195-96 (citation omitted) (describing the claim as a simple
"relabeling of the nearly identical LMRA claim"). In short, it concluded there was no way of
assessing whether the plaintiffs "truly suffered an adverse employment action … without first
determining whether [they] were entitled to pension contributions …." *Id.* at 196-97, 199.

Here, AMS argues that Plaintiff's claims necessitate interpretation of several provisions
of the CBA before the Court can determine whether Chlan acted consistent with his role under
those provisions when he engaged in the conduct Plaintiff alleges was discriminatory and
retaliatory. [*See* D.E. 10 at 13]. AMS further contends that *Medley*'s conclusions as to traditional
NJLAD claims "are entirely distinguishable and not relevant to this case" because the claims in
this action "are quite different," directly involve the alleged conduct of Chlan, and "cannot be
addressed absent a full review and comprehensive analysis of the … [CBA provisions] relating
to the assignment of work and the Union's role in assigning hours …." [*Id.* at 14]. To the
contrary, however, *Medley* plainly forecloses AMS's arguments. In reaching its conclusion as to

the pension contributions-based NJLAD claim, the *Medley* court stated it had no means of

assessing whether discrimination occurred before substantially interpreting the CBA. *Medley*,

550 F. Supp. 3d at 199. On the other hand, it noted that it did "not discover[] any similarly

unique or pressing concerns regarding the need to interpret the CBA for [the] discrimination

claims." *Id.* at 200. For example, it concluded that even though the CBA had provisions

governing overtime, back pay, and wage increases and deductions, the defendants had failed to

show why an interpretation of those provisions was necessary to adjudicate the traditional

NJLAD claims. *Id.* at 200-01. Centrally, it noted that no party had put any of those provisions in

dispute. *Id.* (citation omitted). Rather, "the only relevant issue … [was] whether [the employer]

engaged in the alleged conduct, and whether they engaged in it due to [the] Plaintiffs' race,

ethnicity, national origin, or color." *Id.* at 201 (concluding that, at least on the record before it,

"no substantial interpretation of the CBA would be required to adjudicate those claims").

Other courts in this District have conducted the same analysis and reached similar

conclusions. For example, one court—while "acknowledg[ing] that … the first element of CEPA

may implicate the provisions of the CBA [at issue in that case] dealing with shift assignment and

reduction of hours generally"—concluded that resolution of the CEPA claim did not

substantially depend on the interpretation of those provisions because the plaintiff did not allege

the defendants violated the CBA, and the primary issue was the defendants' motivation. *Norton*,

2017 WL 3610492, at *9 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)); *see also, e.g.,*

*Patterson*, 262 F. Supp. 2d at 460 ("Although there may be incidental reference to the CBA to

determine what the 'holidays' are, such reference is only for definitional purposes and the CBA

does not supply a rule of decision."). Otherwise, if the mere reference to a CBA were to give rise

to federal jurisdiction, "then 'all discrimination [and retaliation] actions brought by unionized

employees would be preempted because the starting point for every case would have to be the [CBA].'" *Barone*, 2019 WL 3297230, at *6 (citation omitted). Ultimately, the *Medley* court described the key distinction in the LMRA preemption analysis as follows:

> … For their pension NJLAD claim, Plaintiffs themselves directly put into contention the proper interpretation of the CBA's provisions governing pension contributions; for their NJLAD claim focused on paycheck deductions, Plaintiffs' Complaint, on its face, does not specifically dispute whether certain provisions of the Union Constitution or Bylaws might provide for deductions, but essentially alleges that Defendants' shifting explanations for the deductions are false and that the true explanation is discrimination based on race, ethnicity, national origin, and color.

*Id.* Here, because Plaintiff has not put the interpretation of a CBA provision at issue, or disputed the meaning of any such provision, the Court concludes that the claims in this action are akin to the two categories of claims that the *Medley* court found were not preempted by the LMRA.

For the same reasons, AMS's reliance in *Miles v. National Football League*, 641 F. Supp. 3d 91 (D.N.J. 2022), is misplaced. In that case, a professional football player asserted, among other things, NJLAD claims against the National Football League ("NFL"), arising from injuries he sustained during an NFL game. *Id.* at 95. The plaintiff alleged the NFL caused those injuries by requiring him to comply with equipment provisions in collectively bargained agreements and to remove a protective shield from his helmet that he had previously used to minimize the effects of ocular photosensitivity and photophobia caused by medical condition. The District Court found complete preemption of the NJLAD claims after it concluded that examination of the controlling CBA in that action was required to: (i) assess the legal effect of collectively bargained agreements and contracts; (ii) interpret them "to determine whether there [was] a 'legally recognizable employment relationship between' [the] [p]laintiff and the [NFL]"; and (iii) "determine whether the NFL had a legitimate, non-discriminatory reason for its alleged refusal to permit Plaintiff to wear [a] shield." *Id.* at 97. *Miles* does not compel the same outcome here.

First, here, there is no dispute over whether Plaintiff is an employee of AMS. Second, unlike in this action, the *Miles* court implicitly concluded—like the *Medley* court did—that there were questions and controversies about the meaning of the terms of the applicable agreements and the parties' respective responsibilities. *See id.* at 96-88. Moreover, the same District Court that issued the *Miles* decision refused to hold that certain NJLAD claims were preempted by the LMRA in a subsequent action, signaling the narrow and case-specific conclusions reached in *Miles*. *See generally Perry v. United Parcel Serv.*, No. 21-11028, 2024 WL 939642 (D.N.J. Mar. 5, 2024) (involving a lawsuit brought by a unionized truck driver, who asserted discrimination, retaliation, and hostile work environment claims under the NJLAD). Despite finding that "allegations regarding seniority, job preference, transfer eligibility, and the timely resolution of grievances [were] preempted," the District Court in *Perry* properly concluded that claims concerning harassment and hostile work environment, such as those asserted by Plaintiff in this action, were not preempted. *Id.* at *2, 4 (citing *Patterson*, 262 F. Supp. 2d at 465-66).

Notably, last month, another Court in this District refused to find wrongful discharge and hostile work environment state law claims preempted under the LMRA. *See Mateo v. First Transit Inc.*, No. 19-17302, 2024 WL 1328212 (D.N.J. Mar. 28, 2024). In that case, the plaintiff alleged that his employer—in retaliation for sexual harassment and safety hazard complaints— wrongfully denied him extra routes despite his seniority, issued him a "fraudulent" warning, and refused to award him a route for an extended period. *Id.* at *8. The *Mateo* court held that none of those claims required interpretation of a CBA, and distinguished its case from *Medley*, where the parties disputed the meaning of CBA terms pertaining to pension contributions. *Id.* Finding "[n]o such dispute exists," the *Mateo* court concluded that the plaintiff's claim that his employer "retaliated against him by not awarding him extra shifts and manufacturing bogus disciplinary

actions … d[id] not concern the meaning of the CBA's seniority provision or any other term." *Id.*
(stating that the employer's defense that it "assign[ed] routed based on employees' seniority in
accordance with the CBA … involved a 'purely factual inquiry' that 'does not turn on the
meaning of any provision of a [CBA]'" (citation omitted)).[3]

      Finally, AMS categorically asserts that this Court must interpret the CBA to determine
whether AMS may be found vicariously liable for Chlan's conduct. [*See* D.E. 10 at 11-12]. This
Court disagrees and highlights that Plaintiff's allegations of harassment and retaliation are not
limited to Chlan. [*See generally* D.E. 1-1, Compl.]. Indeed, the complaint states that members of
upper management "either participated in the harassment or were willfully indifferent," and that
AMS is liable because it knew or should have known of the harassing conduct, delegated control
to the harassing employees, and failed to promulgate an anti-harassment policy and take remedial
measures. [*Id.* ¶¶ 49-52]. Under New Jersey law, the Court must engage in a fact-sensitive
analysis to determine employer liability in the context of a hostile work environment
discrimination claim under the NJLAD and a retaliation claim under CEPA. *See Lehmann*, 132
N.J. at 624, 626 (endorsing a three-part, fact-sensitive standard providing, in relevant part, that
"agency principles, which include negligence, should be applied to decide if an employer is

---

[3] Notably, there is no complete preemption under Section 301 of the LMRA where a defendant invokes a
provision of the CBA defensively. *See Sealy*, 2014 WL 7331950, at *4 (stating that the defendant cannot
convert an action to one arising under federal law "merely by injecting a federal question into an action
that asserts what is plainly a state-law claim" (citation and quotation marks omitted); *McKeown*, 2012 WL
5504866, at *3 ("While it is conceivable that the CBA could give rise to a defense of some kind, that
amounts to defensive preemption, a wholly distinct concept from complete preemption giving rise to a
right of removal."); *see also Caterpillar Inc.*, 482 U.S. at 398 ("It is true that when a defense to a state
claim is based on the terms of a collective bargaining agreement, the state court will have to interpret that
agreement to decide whether the state claim survives. But the presence of a federal question … in a
defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint
rule-that the plaintiff is the master of the complaint ... and that the plaintiff may, by eschewing claims
based on federal law, choose to have the case heard in state court."); *Barone*, 2019 WL 3297230, at *6
("There is a difference between 'interpreting' the CBA and referring to it as part of a defense.").

liable for compensatory damages that exceed [] equitable relief"); *see also Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 417, 419 (1994) (holding "that the standards governing employer liability as determined and explained in [*Lehman*] are fully applicable to actions brought under CEPA"); *Blount*, 2023 WL 4621881, at *8-9 (stating that "[i]ndividual liability under the CEPA may attach to individuals who take retaliatory actions within the scope of their employment and may be extended to indirect supervisors and coworkers who participate in the alleged retaliation").

 For example, in the context of supervisory liability, an employer may be held vicariously liable if the supervisor acted within the scope of his or her employment. *Jorrin v. Lidestri Foods, Inc.*, No. 11-2064, 2013 WL 1316160, at *6 (D.N.J. Mar. 28, 2013) (citing *Lehmann*, 132 N.J. at 623). If the supervisor acted outside such scope, vicarious liability may still attach "if the employer contributed to the harm through its negligence, intent, or apparent authorization of the harassing conduct, or if the supervisor was aided in the commission of the harassment by the agency relationship." *Lehmann*, 132 N.J. at 624. Thus, even if Chlan, Vroman, or other members of upper management are deemed not to have acted within the scope of their employment, AMS may still be held vicariously liable if it: (i) "grant[ed] the supervisor[s] the authority to control the working environment and the supervisor[s] abuse[d] that authority to create a hostile work environment"; (ii) "had actual or constructive notice of the harassment" and "did not promptly and effectively act to stop it"; or (iii) "negligently or recklessly failed to have an explicit policy that bans [] harassment and that provides an effective procedure for the prompt investigation and remediation of such claims." *Id.* at 622, 624; *but see Aguas v. State*, 220 N.J. 494, 512 (2015) (noting that liability may be imposed on an employer under the NJLAD based on either (i) claims for vicarious liability or (ii) direct claims for negligence or recklessness). Thus, like in the

18

application of the traditional elements of a NJLAD or CEPA claim, it would thus appear that resolving employer liability issues would heavily rely on the parties' conduct rather than an interpretation of the provisions of the applicable CBA.

Concluding that AMS has not met its burden of showing that Section 301 of the LMRA preempts Plaintiff's claims and that the District Court has subject matter jurisdiction over Plaintiff's claims, this Court recommends remand of the action to state court.[4]

        D.      <u>Attorneys' Fees and Costs Are Not Warranted.</u>

Finally, Plaintiff seeks fees and costs pursuant to the removal statute, which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). Otherwise, courts have discretion to award such fees. *See id.* at 141; *Castillo v. Express Scripts, Inc.*, No. 18-3144, 2018 WL 4941788, at *5 (D.N.J. Oct. 12, 2018).

---

[4] Although AMS does not expressly address Plaintiff's assault-and-battery claim in opposition to the remand motion, it asserts all of Plaintiff's claims are preempted. [*See* D.E. 1, Notice of Removal ¶¶ 7-8 ("The state law claims that Plaintiff has attempted to assert against Defendants are inextricably linked to the interpretation of the terms of the CBA. Under the authority of … [Section 301 of the LMRA], this action may properly be removed … because the Court has original federal question jurisdiction over it and Plaintiff's claims are inextricably linked to the interpretation of the terms of the CBA.")]. It is not apparent whether AMS argues the assault-and-battery claim is similarly preempted, or whether it relies on the supplemental jurisdiction statute to invoke the Court's subject matter jurisdiction. [*See id.* ¶ 9]. In any event, the Court lacks subject matter jurisdiction over such claim. Without doubt, the Court need not interpret the CBA to resolve the assault-and-battery claim. Moreover, having found that the District Court lacks original jurisdiction over Plaintiff's NJLAD and CEPA claims based on a federal question, this Court concludes there is no basis to exercise supplemental jurisdiction over the assault-and-battery claim because there can be no such jurisdiction without first having original jurisdiction over some claim. *See* 28 U.S.C.A. § 1367(a) ("… [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ….").

Relying on an inapposite Third Circuit case,[5] Plaintiff argues removal here was baseless, stating that Courts in this District have consistently held that Section 301 of the LMRA does not preempt NJLAD and CEPA claims, and that AMS "did not even attempt to articulate how [his] claims invoked the CBA." [D.E. 7-1 at 11-12]. In reply, AMS contends it had an objectively reasonable basis for removal because it relied on two recent decisions from this District, which found these types of claims preempted under Section 301 of the LMRA. [D.E. 10 at 16].

Here, while this Court finds that removal was inappropriate, it also concludes that AMS did not lack an objectively reasonable basis for removal. AMS's reliance upon inapposite federal court decisions finding preemption of similar state law claims, while ultimately misguided, was not wholly unreasonable. At a minimum, it appears AMS had a good faith belief that Plaintiff's claims would require interpretation of the CBA. Moreover, "[n]o evidence exists to conclude that [AMS] attempted the removal to delay or to unreasonably impose additional litigation costs upon Plaintiff." *Montana v. Acra Turf Club, LLC*, No. 11-1394, 2011 WL 4703068, at *4 (D.N.J. Oct. 4, 2011). Finally, although this Court recommends remand, it recognizes that "the law governing preemption in the context of the LMRA is sufficiently complex such that [it] is unable to conclude that the removing party lacked an objectively reasonable basis seeking removal." *Sealy*, 2014 WL 7182341, at *4 (citing *Martin v. Franklin Capital Corp.,* 536 U.S. 132, 141 (2005)). Accordingly, this Court declines to recommend an award of attorneys' fees and costs.

---

[5] *See S. Annville Twp. v. Kovarik*, 651 F. App'x 127, 128 (3d Cir. 2016) (holding the district court did not abuse its discretion in awarding fees and costs pursuant to Section 1447(c) "based upon the [defendants'] baseless removal of [an] underlying municipal lien action" that did not implicate a preemption analysis).

### III.    CONCLUSION

Mindful of the principle that removal statutes should be strictly construed against removal and doubts concerning removal should be resolved in favor of remand, this Court concludes that AMS failed to meet its heavy burden of demonstrating subject matter jurisdiction and that removal was proper. Accordingly, for the foregoing reasons, and good cause shown, this Court respectfully recommends that Plaintiff's motion to remand [D.E. 7] be granted in part and denied in part as follows: (i) the action should be remanded to the Superior Court of New Jersey, Middlesex County; and (ii) attorneys' fees and costs should not be awarded to Plaintiff.[6]

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and L. Civ. R. 72.1(c)(2), the parties may file and serve objections to this Report and Recommendation within fourteen days of service of a copy thereof. The Clerk of Court is directed to serve the parties with electronic notice upon the filing and entry of this Report and Recommendation.

_/s/ André M. Espinosa_
ANDRÉ M. ESPINOSA
United States Magistrate Judge

Dated: April 25, 2024

---

[6] Although the District Court did not refer AMS's motion to dismiss Plaintiff's NJLAD and CEPA claims as preempted under Section 301 of the LMRA [*see* D.E. 5-1 at 15-17], this Court notes that such motion should be denied in the event the District Court adopts this Court's Report and Recommendation.